## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A WARRANT

Your affiant, Nicholas R. Dosmann, Border Patrol Agent of the United States Border Patrol, being duly sworn, does depose and state the following:

## INTRODUCTION AND AGENT BACKGROUND

1) I am a Border Patrol Agent - Intelligence with the United States Border Patrol (USBP) currently assigned to Tucson, Arizona. I have been an agent with the USBP since November 13, 2006. I completed the USBP Academy in March of 2007, where I received instruction in constitutional law, immigration law, criminal law, and federal and civil statutes. I have also received instruction in the detection, interdiction, and arrest of narcotics smugglers, alien smugglers, and aliens illegally present in the United States. I have been assigned to the Tucson Sector Intelligence Unit for the past three years.

2) Since October 29, 2018, I have been assigned to the Tucson Sector Cyber Intelligence Group. I have conducted investigations involving illicit activity and have gathered and structured evidence and facts pertaining to administrative and criminal cases. I routinely perform record checks through various law enforcement databases to establish accuracy of information as well as to gather facts further relevant to a respective case. I have assisted fellow agents in the development of their cases.

3) The statements contained in this affidavit are based on information provided by fellow Border Patrol Agents and on my experience as a Border Patrol Agent in the USBP. Since this affidavit is submitted for the limited purpose of securing a search warrant, I have not included all facts known to me regarding this investigation. I have set forth facts that establish probable cause to believe that the suspects/defendants referred to in this investigation violated 8 U.S.C. § 1324, Transportation of Illegal Aliens. This affidavit is intended to show only that there exists probable cause for the requested warrant and does not portray all my knowledge about this matter.

4) Based on my background, training, and experience, I know that individuals who are involved in alien smuggling often do the following:

1

a. Use cellular telephones and laptops to arrange, coordinate, and monitor criminal activities including communicating with smugglers, arrangers, and other transporters/drivers. They also use these devices to communicate with these same individuals during counter surveillance activities, to warn other co-conspirators of the presence of law enforcement or other obstacles to their criminal plans;

b. Use cellular telephones and laptops to contact financial institutions where they launder their proceeds or receive monies for payment for their role in the scheme, individuals who sell/rent real estate, vehicles, or hotel rooms, restaurants or other facilities the smuggler uses in the course of his illegal activities;

c. Use all the communication technologies available within the particular cellular telephone and laptop, including voice messaging, texting, audio communication, direct dial, push-to-talk, emailing, internet access, speed dial, photo and video images, and contact lists containing contact information for their criminal associates to accomplish their criminal activities;

d. Use multiple cellular telephones and often change cellular telephones to avoid detection by law enforcement;

e. Use cellular telephones to store and maintain contact lists containing the names, nicknames, telephone numbers, e-mail addresses and social media profile identifiers of other criminal associates; communicate with other criminal associates by voice, e-mail and text message, including through Apple iMessage and Face Time, as well as third-party applications such as WhatsApp, Facebook Messenger, Instagram, Snapchat, and BlackBerry Messenger; record, store and share with other criminal associates, including through the use of third-party applications, photographs, videos and other evidence of illicit activity such as photographs of vehicles, to ensure that the aliens find the vehicle that they are supposed to be transported by; and to utilize all available Global Positioning System ("GPS") functions, including navigation and mapping, which
GPS data then may be recorded and stored.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

5) The property to be searched consists of one (1) cellular phone. The cellular phone to be examined is an iPhone 11 Pro belonging to Angielina HERNANDEZ, further described in Attachment A (incorporated by reference). This phone is referred to as the **Target Phone**. The **Target Phone** is secured inside the Brian A. Terry Border Patrol Station evidence room; located at 2136 South Naco Highway, Bisbee, Arizona, 85603. The **Target Phone** is sealed in Department of Homeland Security evidence bag with a signed Form 6051S Custody Receipt for Seized Property and Evidence.

6) The requested warrant would authorize the forensic examination of the **Target Phone** for the purpose of identifying electronically stored data particularly described in Attachment B (incorporated herein by reference).

## PROBABLE CAUSE

7) On August 2, 2021, a Border Patrol Agent (BPA) responded to a call from a trooper with Arizona DPS, who had encountered a driver that he believed was smuggling undocumented non-citizens.

8) BPA arrived at the scene of Arizona DPS Trooper's vehicle stop north of Nicksville, Arizona near Marker 329 on State Route 92. He had stopped a gold GMC Yukon for "speed greater than reasonable and prudent" (ARS 28-701A). The Yukon was bearing Arizona plate BFC7607. The driver, Angielina Genene HERNANDEZ (DOB: 02/24/1999), claimed to be a United States citizen who was born in Bakersfield, California. BPA then performed an immigration inspection on the four backseat passengers of the Yukon. BPA determined through immigration questioning that all four were undocumented non-citizens without the proper documentation to enter, pass through, or legally remain in the United States of America.

9) The undocumented non-citizens were interviewed by BPA. All four of the undocumented non-citizens stated they had paid an alien smuggling organization to get them into the United States. They relayed they had crossed into the United States by using a ladder to scale a border fence. From there, they were guided by cellular phone communications and

3

GPS coordinates to a pick-up location on a dirt road. Eventually the vehicle driven by HERNANDEZ drove down the dirt road and parked near their location, at which point the undocumented non-citizens all got into the vehicle.

9) In my experience as a Border Patrol Agent - Intelligence and based upon the statements of all four undocumented non-citizens, I believe member(s) of the smuggling organization were in contact via cellular phone with both the undocumented non-citizens and HERNADEZ to guide them to a meet point. The communications would have been necessary to coordinate the pickup time and location of the noncitizens, particularly due to the remote location the meet occurred.

11) Based on all these facts, I believe that **Target Phone**, which was seized during the arrest of Angielina HERNANDEZ, was used to communicate during the smuggling venture to facilitate the crime of transporting illegal aliens for profit.

12) Since the date of the arrest, the **Target Phone** has been in storage at the location described in paragraph 5 (five). The **Target Phone** has been stored in such a manner that its contents, to the best of my knowledge, are in substantially the same state as when it first came into possession of the USBP.

## TECHNICAL TERMS

13)    Wireless telephone: A wireless telephone (or mobile telephone or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments and other information on personal calendars; and accessing and

4

downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

14) Digital camera: A digital camera is a camera that records pictures and video as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos. Most cell phones currently manufactured contain digital cameras as a standard feature.

15) Portable media player. A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock or games. Most cell phones currently manufactured contain portable medial players as a standard feature.

16) Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state. Most cell phones currently manufactured allow the use of the Internet as a standard feature. Further, most current cell phones allow the user to transmit electronic messages via standard email services or specially designed communication applications between parties.

17) Based on my training, experience, research, and from consulting the manufacturer's advertisements and product technical specifications available online for these types of cellular phones, and based upon my discussions with experts, I know that the cellular phones which are the subject of this search warrant application most likely have capabilities that allow them to also serve as a radio communication transmitter, wireless telephone, GPS device, wireless internet connectivity, and text message capabilities, as these are generally standard features. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device; evidence of where such persons were when they possessed or used the device; evidence of who such persons were with when they possessed or used the device; evidence of persons with whom they communicated when they possessed or used the device; evidence of text, email, other electronic messaging applications and voice mail communications between the person who possessed or used the device and others. Navigational coordinates may also be transmitted to and/or from these devices to determine the user's location through a GPS application.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

18) Based on my knowledge, training and experience, I know that electronic devices such as the **Target Phone** in this case, can store information for long periods of time. Similarly, things that have been viewed via or uploaded to the Internet are typically stored for some period of time on the device. Additionally, computer files or remnants of such files can be recovered even if they have been deleted. This is because when a person "deletes" the information on an electronic device, the data does not actually disappear, rather, the data remains on the storage medium until it is overwritten by new data. Information described in this affidavit can often be recovered by forensic computer experts using forensic tools and software.

19) As further described in this affidavit and Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes

how the **Target Phone** was used, where it was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be on the **Target Phone** is more fully set forth in the factual section contained herein and because:

A. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file, including frequency channels, text messages, video, or photographs.

B. Forensic evidence on a device can also indicate who has used or controlled the devices. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

C. A person with appropriate familiarity of how an electronic device works may, after examining the forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

D. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

E. Further, in finding evidence of how a device was used, the purpose of its use, who used it, when and where, sometimes it is necessary to establish that a particular thing is not present on a storage medium, for example, the absence of the entry of a name in a contact list as evidence that the user(s) of the **Target Phone** did not have a relationship with the party.

F. The examination of the **Target Phone** may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether

7

it is evidence described by the warrant. Because this warrant only seeks permission to examine a device already in the possession of USBP, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, there is probable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

20) I submit that this affidavit supports probable cause for search warrants authorizing the examination of the **Target Phone** described in Attachment A to seek the items described in Attachment B. I believe that the **Target Phone** contains evidence relating to the commission of a criminal offense, which is violations of Title 8, United States Code, Section 1324, Transportation of Illegal Aliens, as well as constitutes property designed for use, intended for use, or used in committing the aforementioned crime.

NICHOLAS R DOSMANN
Digitally signed by NICHOLAS R DOSMANN
Date: 2021.08.24 09:16:14 -07'00'

Nicholas R. Dosmann, Border Patrol Agent - Intelligence
United States Border Patrol

Subscribed and sworn to telephonically.
This 24th day of August 2021

Honorable Bruce G. Macdonald
United States Magistrate Judge
District of Arizona

ATTACHMENT A

ITEMS TO BE SEARCHED

The cellular phone to be examined is an iPhone 11 Pro belonging to Angielina Hernandez. This phone is referred to as the **Target Phone**. The **Target Phone** is secured inside the Brian A. Terry Border Patrol Station evidence room; located at 2136 South Naco Highway, Bisbee, Arizona, 85603. The **Target Phone** is sealed in Department of Homeland Security evidence bag with a signed Form 6051S Custody Receipt for Seized Property and Evidence.

ATTACHMENT B

ITEMS TO BE SEIZED

1. Data and/or digital files stored on or accessed through the **Target Phone** (as described in Attachment A) relating to violations of 8 U.S.C. § 1324, wherever it may be stored or found, specifically including:

    a. lists of contacts and related identifying information;

    b. agreements made, directions and instructions received and sent, as well as dates, places, and amounts of specific transactions;

    c. types, amounts of money obtained, received, exchanged, deposited, withdrawn, or delivered as well as dates, places, exchange rates, and amounts of specific transactions;

    d. any information related to sources of money or smuggling activity data (including names, addresses, phone numbers, or any other identifying information);

    e. all bank records, checks, credit card bills, account information, and other financial records.

2. Electronic correspondence stored on or accessed through the **Target Phone** relating to alien smuggling, to include emails and attached files, text messages, and instant messaging logs.

3. Information related to incoming calls, outgoing calls, missed calls, and duration of calls stored on or accessed through the **Target Phone**.

4. Contact lists stored on or accessed through the **Target Phone**, to include telephone and email contact names, telephone numbers, addresses, and email addresses.

5. Evidence of persons who used, owned, or controlled the **Target Phone**.

6. Logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, instant messaging logs, photographs, electronic correspondence, and telephone contact lists stored on or accessed through the **Target Phone**.